**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ALASKA**

JOANNE C.,[1]

                Plaintiff,

v.

MARTIN J. O'MALLEY,[2]
Commissioner of the Social Security Administration,

                Defendant.

Case No. 5:23-cv-00002-SLG

## <u>DECISION AND ORDER</u>

On or about December 21, 2015, Joanne C. ("Plaintiff") protectively filed applications under Title II of the Social Security Act,[3] with an alleged onset date of July 15, 2012.[4]  Plaintiff has exhausted her administrative remedies and filed a Complaint

---

[1] Plaintiff's name is partially redacted in accordance with Fed. R. Civ. P. 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.  *See* Memorandum, Committee on Court Administration and Case Management of the Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

[2] Martin J. O'Malley is now the Commissioner of Social Security and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d).  *See also* section 205(g) of the Social Security Act, 42 U.S.C. 405(g) (action survives regardless of any change in the person occupying the office of Commissioner of Social Security).

[3] Title II of the Social Security Act provides benefits to disabled individuals who are insured by virtue of working and paying Federal Insurance Contributions Act (FICA) taxes for a certain amount of time.  Title XVI of the Social Security Act is a needs-based program funded by general tax revenues designed to help disabled individuals who have low or no income.  Plaintiff brought claims under Title II only.  Although each program is governed by a separate set of regulations, the regulations governing disability determinations are substantially the same for both programs. *Compare* 20 C.F.R. §§ 404.1501–1599 (governing disability determinations under Title II) *with* 20 C.F.R. §§ 416.901–999d (governing disability determinations under Title XVI).  For convenience, the Court cites the regulations governing disability determinations under both titles.

[4] Administrative Record ("A.R.") A.R. 329, 1225.  The application summary, not the application itself, appears in the Court's record and is dated January 12, 2016.  A.R. 329.  Pursuant to 20 C.F.R. §§ 416.340-350, a protective filing date establishes the earliest possible application date

seeking relief from this Court.[5]  Plaintiff's Opening Brief asks the Court to reverse and remand the agency's decision for a finding of disability and calculation of benefits.  In the alternative, Plaintiff requests reversal and remand for further administrative proceedings, including a de novo hearing and new decision properly applying the regulations.[6]  The Commissioner filed the Administrative Record as his Answer and a Response Brief.[7]  Plaintiff filed a Reply Brief.[8]

Oral argument was not requested and was not necessary to the Court's decision. This Court has jurisdiction to hear an appeal from a final decision of the Commissioner of Social Security.[9]  For the reasons discussed below, Plaintiff's request for relief at Docket 10 is DENIED and the Commissioner's decision is AFFIRMED.

## I.  STANDARD OF REVIEW

A decision by the Commissioner to deny disability benefits will not be overturned unless it is either not supported by substantial evidence or is based upon legal error.[10]

---

based on a claimant's oral inquiry about eligibility or a verbal or written statement of intent to file for benefits.  Therefore, December 21, 2015, is considered Plaintiff's application filing date.

[5] Docket 1 (Plaintiff's Compl.).

[6] Docket 10 at 1–2 (Plaintiff's Br.).

[7] Docket 7 (Notice of Lodging Admin. Record); Docket 12 (Commissioner's Br.).  As of December 1, 2022, the Commissioner's "answer may be limited to a certified copy of the administrative record."  *See* Fed. R. Civ. P., Supp. R. 4(b) of Soc. Sec. Actions under 42 U.S.C. § 405(g) (effective Dec. 1, 2022).

[8] Docket 13 (Reply).

[9] 42 U.S.C. § 405(g).

[10] *Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) (citing *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990)).

"Substantial evidence" has been defined by the United States Supreme Court as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[11] Such evidence must be "more than a mere scintilla," but may be "less than a preponderance."[12] In reviewing the agency's determination, the Court considers the evidence in its entirety, weighing both the evidence that supports and that which detracts from the administrative law judge ("ALJ")'s conclusion.[13] If the evidence is susceptible to more than one rational interpretation, the ALJ's conclusion must be upheld.[14] A reviewing court may only consider the reasons provided by the ALJ in the disability determination and "may not affirm the ALJ on a ground upon which he did not rely."[15] An ALJ's decision will not be reversed if it is based on "harmless error," meaning that the error "is inconsequential to the ultimate nondisability determination, or that, despite the legal error, the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity."[16] Finally, the ALJ has a "special duty to fully and fairly develop the record and to assure that the claimant's interests are considered[.]"[17] In particular,

---

[11] *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of New York v. NLRB*, 305 U.S. 197, 229 (1938)).

[12] *Id.*; *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975).

[13] *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

[14] *Ford v. Saul,* 950 F.3d 1141, 1154 (9th Cir. 2020) (citation, alteration, and internal quotation marks omitted).

[15] *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014) (citation omitted).

[16] *Brown-Hunter v. Colvin,* 806 F.3d 487, 492 (9th Cir. 2015) (internal quotations and citations omitted).

[17] *Celaya v. Halter,* 332 F.3d 1177, 1183 (9th Cir. 2003) (quoting *Brown v. Heckler,* 713 F.2d 441, 443 (9th Cir. 1983)).

the Ninth Circuit has found that the ALJ's duty to develop the record increases when the claimant is unrepresented or is mentally ill and thus unable to protect her own interests.[18] However, this duty exists "even when the claimant is represented by counsel."[19]

## II. DETERMINING DISABILITY

The Social Security Act ("the Act") provides for the payment of disability insurance benefits ("DIB") to individuals who have contributed to the Social Security program and who suffer from a physical or mental disability.[20]  In addition, Supplemental Security Income ("SSI") may be available to individuals who do not have insured status under the Act but who are age 65 or older, blind, or disabled.[21]  Disability is defined in the Act as follows:

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.[22]

The Act further provides:

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual),

---

[18] *Tonapetyan v. Halter,* 242 F.3d 1144, 1150 (9th Cir. 2001) (citations omitted).

[19] *Mayes v. Massanari,* 276 F.3d 453, 459 (9th Cir. 2001) (citations omitted).

[20] 42 U.S.C. § 423(a).

[21] 42 U.S.C. § 1381a.

[22] 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

"work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.[23]

The Commissioner has established a five-step process for determining disability within the meaning of the Act.[24] A claimant bears the burden of proof at steps one through four in order to make a prima facie showing of disability.[25] If a claimant establishes a prima facie case, the burden of proof then shifts to the agency at step five.[26] The Commissioner can meet this burden in two ways: "(a) by the testimony of a vocational expert, *or* (b) by reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2."[27] The steps, and the ALJ's findings in this case, are as follows:

**Step 1.** Determine whether the claimant is involved in "substantial gainful activity" ("SGA").[28] *The ALJ determined that Plaintiff had not engaged in SGA since July 15, 2012, the alleged onset date, through her date last insured of December 31, 2016.[29]*

**Step 2.** Determine whether the claimant has a medically severe impairment or combination of impairments. A severe impairment significantly limits a claimant's physical or mental ability to do basic work activities and does not consider age, education, or work

---

[23] 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

[24] 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

[25] *Treichler v. Comm'r Soc. Sec. Admin.*, 775 F.3d 1090, 1096 n.1 (9th Cir. 2014) (quoting *Hoopai v. Astrue*, 499 F.3d 1071, 1074–75 (9th Cir. 2007)); s*ee also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

[26] *Treichler*, 775 F.3d at 1096 n.1; *Tackett*, 180 F.3d at 1098.

[27] *Tackett*, 180 F.3d at 1101 (emphasis in original).

[28] 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

[29] A.R. 1228.

Case No. 5:23-cv-00002-SLG, *Joanne C. v. O'Malley*
Decision and Order
Page 5 of 30

experience.  The severe impairment or combination of impairments must satisfy the twelve-month duration requirement.[30]  *Through the date last insured, the ALJ determined that Plaintiff had the following severe impairments: multiple chemical sensitivity syndrome[31]/reactive airways disease and allergies.  The ALJ determined that Plaintiff's congenital hypothyroidism, kidney stones, and carpal tunnel syndrome were non-severe impairments.  The ALJ also determined that Plaintiff did not have a medically determinable mental impairment.  The ALJ also noted that although Plaintiff developed other impairments after the date last insured, these impairments were not medically determinable on or before the date last insured.[32]*

 **Step 3.**  Determine whether the impairment or combination of impairments meet(s) or equal(s) the severity of any of the listed impairments found in 20 C.F.R. pt. 404, subpt. P, app.1, precluding substantial gainful activity.  If the impairment(s) is(are) the equivalent of any of the listed impairments, and meet(s) the duration requirement, the claimant is conclusively presumed to be disabled.  If not, the evaluation goes on to the fourth step.[33]  *Through the date last insured, the ALJ determined that Plaintiff did not have an*

---

[30] 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

[31] Multiple chemical sensitivity is a "symptom array of variable presentation attributed to recurrent exposure to known environmental chemicals at dosages generally below levels established as harmful; complaints involve multiple organ systems."  *See* STEDMANS MEDICAL DICTIONARY 809520 (Online ed. 2014).

[32] A.R. 1228–29.

[33] 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

*impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.*[34]

Residual Functional Capacity. Before proceeding to step four, a claimant's residual functional capacity ("RFC") is assessed.[35] Once determined, the RFC is used at both step four and step five. An RFC assessment is a determination of what a claimant is able to do on a sustained basis despite the limitations from her impairments, including impairments that are not severe.[36] *The ALJ determined that Plaintiff had the residual functional capacity to perform a full range of work at all exertional levels, but with the following non-exertional limitations: avoid concentrated exposure to vibrations and hazardous machinery and avoid moderate exposure to irritants such as fumes, odors, dust, gases, and poorly ventilated areas.*[37]

**Step 4.** Determine whether the claimant is capable of performing past relevant work. At this point, the analysis considers whether past relevant work requires the performance of work-related activities that are precluded by the claimant's RFC. If the claimant can still do her past relevant work, the claimant is deemed not to be disabled.[38] Otherwise, the evaluation process moves to the fifth and final step.[39] *Through the date*

---

[34] A.R. 1229.

[35] 20 C.F.R. §§ 404.1545(a), 416.945(a).

[36] 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

[37] A.R. 1230.

[38] 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

[39] 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

*last insured, the ALJ determined that Plaintiff was not able to perform her past relevant work.*[40]

**Step 5.**  Determine whether the claimant is able to perform other work in the national economy in view of her age, education, and work experience, and in light of the RFC.  If so, the claimant is not disabled.  If not, the claimant is considered disabled.[41] *The ALJ determined that, considering Plaintiff's age, education, work experience, and residual functional capacity, Plaintiff had acquired work skills from past relevant work that were transferable to other occupations with jobs existing in significant numbers in the national economy, including Accounting Clerk (DOT # 216.482-010, sedentary, SVP 5), Payroll Clerk (DOT # 215.382-014, sedentary, SVP 4), and Budget Clerk (DOT # 216.382-022, sedentary, SVP 5).*[42]

The ALJ concluded that Plaintiff was not disabled at any time from July 15, 2012, the alleged onset date, through December 31, 2016, the date last insured.[43]

### III.    PROCEDURAL BACKGROUND

Plaintiff was considered a person closely approaching advanced age (age 50–54) on the alleged onset date.[44]  Her past relevant work included work as a bookkeeper and sawmill worker.[45]

---

[40] A.R. 1244.

[41] 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

[42] A.R. 1245.

[43] A.R. 1246.

[44] A.R. 329.  *See* 20 C.F.R. §§ 404.1563, 416.963.

[45] A.R. 1244.

Case No. 5:23-cv-00002-SLG, *Joanne C. v. O'Malley*
Decision and Order
Page 8 of 30

In her application, Plaintiff alleged disability due to chemical sensitivity, reactive airway disease, cardiac arrythmia, hypoxia, hypothyroidism, and chronic fatigue.[46]  Her claim was denied at the initial level on December 2, 2016.[47]   On April 3, 2018, she appeared and testified with representation before the assigned ALJ.[48]  On September 28, 2018, the ALJ issued an unfavorable ruling.  The ALJ declined to admit post-hearing evidence.[49]  The Appeals Council vacated the hearing decision and remanded the case back to the ALJ on September 10, 2019.  Specifically, the Appeals Council remanded the case to the ALJ to proffer the post-hearing Internal Medicine Consultative Examination report from Harbin Makin, M.D., and the vocational expert response to interrogatories, to both Plaintiff and Plaintiff's representative and offer Plaintiff an opportunity for a supplemental hearing.[50]

After remand, on February 11, 2020, Plaintiff appeared and testified with representation before the same ALJ at a hearing.[51]  On March 26, 2020, the ALJ issued

---

[46] A.R. 129.

[47] A.R. 108.

[48] A.R. 84–97.

[49] A.R. 112–119.

[50] A.R. 126–27.

[51] A.R. 41–51.

a second unfavorable ruling.[52]  The Appeals Council denied review on August 31, 2020.[53]  Plaintiff appealed to this Court on October 8, 2020.[54]

On June 23, 2021, this Court reversed and remanded the Commissioner's decision for further proceedings.[55]  On February 7, 2023, Plaintiff appeared and testified telephonically, with representation, before a new ALJ in Seattle, Washington.[56]  On March 1, 2023, the ALJ issued an unfavorable decision.[57]  On June 25, 2023, Plaintiff timely filed her Complaint.[58]

## IV.    DISCUSSION

Plaintiff is represented by counsel in this appeal.  Plaintiff alleges that the ALJ: (1) failed to weigh the medical opinions from Plaintiff's treating providers according to the regulations prior to March 27, 2017; and (2) failed to provide clear and convincing reasons for rejecting Plaintiff's subjective pain complaints.[59]  The Commissioner disagrees and urges the Court to affirm the ALJ's decision.[60]

---

[52] A.R. 15–24.

[53] A.R. 1–6.

[54] A.R. 1319–21.

[55] A.R. 1322–39.

[56] A.R. 1259–80.  The ALJ noted that the hearing was held by telephone due to the extraordinary circumstances presented by the COVID-19 pandemic.  A.R. 1256.

[57] A.R. 1225–46.

[58] *See* Docket 1.

[59] Docket 10 at 14–26.

[60] Docket 12 at 2–10.

Case No. 5:23-cv-00002-SLG, *Joanne C. v. O'Malley*
Decision and Order
Page 10 of 30

## A. Medical Opinion Evidence

Plaintiff alleges that the ALJ failed to weigh Plaintiff's treating and examining physicians' opinions pursuant to the SSA regulations in effect prior to March 27, 2017. Specifically, she asserts that the ALJ failed to provide specific, legitimate reasons for discounting treating physician Dr. Buscher's "well-supported and explained opinions[.]"[61] She also alleges that the ALJ failed to provide any specific and legitimate reasons for discounting examining physician Dr. Hu's opinion.[62] Plaintiff protectively filed her Title II application on December 21, 2015.[63] Therefore, the rules in effect prior to the SSA's revisions regarding the evaluation of medical evidence apply in this case.[64]

### 1. Legal Standards

"Regardless of its source, [the SSA] will evaluate every medical opinion [it] receive[s]."[65] For applications filed before March 27, 2017, the applicable regulations provided that medical opinions from treating physicians are given "controlling weight" if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques and [are] not inconsistent with the other substantial evidence in the claimant's

---

[61] Docket 10 at 15.

[62] Docket 10 at 22–23.

[63] A.R. 1225.

[64] On January 18, 2017, the SSA published revisions to the rules regarding the evaluation of medical evidence. 82 F.R. 5844, 5869 (1-18-2017). The revisions became effective on March 27, 2017. *See* Hearings, Appeals, and Litigation Law Manual ("HALLEX") I-5-3-30 (IV)(B), (C).

[65] 20 C.F.R. §§ 404.1527(c), 416.927(c). These sections apply to claims filed before March 27, 2017.

Case No. 5:23-cv-00002-SLG, *Joanne C. v. O'Malley*
Decision and Order
Page 11 of 30

case record."[66]  When a treating doctor's opinion is not controlling, it is evaluated pursuant to factors including: (1) the examining or treating relationship; (2) the consistency of the medical opinion with the record as a whole; (3) the physician's area of specialization; (4) the supportability of the physician's opinion through relevant evidence; and (5) other relevant factors, such as the physician's degree of familiarity with the SSA's disability process and with other information in the record.[67]

In the Ninth Circuit, "[t]o reject the uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence."[68]  When "a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence."[69]  This can be done by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings."[70]  An ALJ may reject the opinion of a doctor "if that opinion is brief, conclusory, and inadequately supported by clinical findings."[71]

       2.    *Medical Opinions of David Buscher, M.D.*

---

[66] *Trevizo v. Berryhill,* 871 F.3d 664, 675 (9th Cir. 2017); 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

[67] 20 C.F.R. §§ 404.1513a(b), 416.913a(b), 404.1527(c)(2), 416.927(c)(2).  These sections apply to claims filed before March 27, 2017.  *See* 20 C.F.R. § 404.614.

[68] *Trevizo,* 871 F.3d at 675 (internal citations omitted).

[69] *Revels v. Berryhill,* 874 F.3d 648, 654 (9th Cir. 2017).

[70] *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).

[71] *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005).

Plaintiff's physician, David Buscher, M.D., provided several medical opinions during and after the date last insured. On June 16, 2014, Dr. Buscher opined that Plaintiff was "basically medically disabled and unemployable because of her chemical sensitivities."[72] On January 6, 2016, Dr. Buscher completed a residual functional capacity form. He opined that Plaintiff could stand for one hour and sit for six to eight hours; could reach above the shoulders and down to her waist; handle objects carefully and frequently with fingers; could rarely reach down to the floor; could regularly lift/carry five to 10 pounds; would have some difficulty bending, squatting, and kneeling; and "would not be able to tolerate most, if not all, workplace environments" because of her chemical sensitivities.[73] On May 1, 2018, Dr. Buscher opined that Plaintiff had "[n]o problems with breathing, unless she is exposed to chemical irritants, which can cause bronchospasm and bronchial inflammation."[74] On June 18, 2018, Dr. Buscher opined that Plaintiff "is not employable in any type of situation where she is exposed to chemicals such as detergents, perfumes, fabric softener, deodorants, etc.[,]" but that "[a]s long as she is not exposed to chemicals, she is fairly functional."[75] He opined that Plaintiff would be absent from work two to three times per week and that she would need extra breaks.[76] In February 2019, Dr. Buscher opined that Plaintiff had been "medically disabled for some

---

[72] A.R. 647.

[73] A.R. 456–58.

[74] A.R. 1125.

[75] A.R. 1081.

[76] A.R. 1082.

time now." He noted that, at the time, Plaintiff was "worse overall because she's been traveling a lot and having more exposures to chemicals."[77] On April 9, 2019, Dr. Buscher opined that Plaintiff "would not be suitable for sustained employment because of her asthma condition and chemical sensitivities, which would cause her to have excessive work absences."[78] In January 2020, Dr. Buscher noted that Plaintiff's "multiple chemical sensitivity problem has not resolved and continues to be a major factor in her life, which limits her ability to work, general lifestyle, social interactions."[79] On April 20, 2020, Dr. Buscher again opined that Plaintiff was "medically disabled and has been for many years, certainly not employable at this time or the near future." He noted Plaintiff's reports that frequent exposure to her husband's cigarette smoking aggravated her reactive airways disease and exposure to mold aggravated her breathing problem.[80] In January 2022, Dr. Buscher opined that "[d]ue to her widespread symptoms, pain, fatigue, and sensitivities [Plaintiff] is not employable in a conceivable position consistently."[81] On December 6, 2022, Dr. Buscher opined that Plaintiff continued to be totally medically disabled due to chronic pain, chronic fatigue, fibromyalgia, peptic effective fumes, multiple chemical sensitivity, and mast cell activation syndrome.[82]

---

[77] A.R. 1124.

[78] A.R. 1108.

[79] A.R. 1510.

[80] A.R. 1509.

[81] A.R. 1507.

[82] A.R. 1505.

In its previous order, this Court found that the ALJ failed to provide specific and legitimate reasons for rejecting Dr. Buscher's 2014 and 2016 opinions and that any error regarding his opinions in 2018 and 2019 was harmless, as these opinions were offered after Plaintiff's date last insured.[83]  In the current decision under review, the ALJ did not separately discuss Dr. Buscher's opinions, but provided an explanation for Dr. Buscher's "many opinions."[84]   Here again, the Court will consider only the 2014 and 2016 opinions in this decision and order.

Under the prior regulations applicable in this case, as a treating source, the ALJ should generally give more weight to Dr. Buscher's medical opinions than "the opinion of doctors who do not treat the claimant[.]"[85]   Because Dr. Buscher's opinions were contradicted by the agency's reviewing physicians, the ALJ was required to provide specific, legitimate reasons for discounting them.

The Court is confined to reviewing the reasons the ALJ asserts.[86]  Based on the testimony of medical expert Stephen Andersen, M.D., the ALJ found that Plaintiff should avoid moderate exposure to irritants such as fumes, odors, dust, gases, and poorly ventilated areas.[87]  He provided several reasons for discounting Dr. Buscher's medical opinions, including: (a) Dr. Buscher "failed to adequately document the objective clinical

---

[83] A.R. 1332.

[84] A.R. 1236–37.

[85] *Woods v. Kijakazi,* 32 F.4th 785, 789 (9th Cir. 2022) (citation omitted).

[86] *Brown-Hunter,* 806 F.3d at 494 ("As we have long held, we are constrained to review the reasons the ALJ asserts.") (quotations, citations, and emphasis omitted).

[87] A.R. 1230.  *See* A.R. 40.

picture, including abnormalities or observations of signs and symptoms that would be in line with the reported allegations"; (b) medical records showed Plaintiff was "generally stable to improved" from an objective and clinical standpoint at treatment visits; (c) Dr. Buscher's treatment notes and explanations failed to support the most limiting restrictions that Plaintiff would be unable to tolerate nearly all workplaces and have excessive work absences; (d) Plaintiff's normal physical examinations and providers' observations of no apparent distress did not support her alleged physical arthralgias, headaches, mid abdominal pain, muscle aches, numbness around the mouth and face, sore throat, and difficulty breathing; and (e) the evidence shows that Plaintiff's progression of symptoms occurred after the date last insured.[88]

### a. Lack of Support for Dr. Buscher's Limitations

"An ALJ is not required to take medical opinions at face value, but may take into account the quality of the explanation when determining how much weight to give a medical opinion."[89] Here, the ALJ discounted Dr. Buscher's medical opinions for the stated reason that Dr. Buscher "failed to adequately document the objective clinical picture, including abnormalities or observations of signs and symptoms that would be in line with the reported allegations."[90] Plaintiff asserts that the ALJ failed to identify the signs and symptoms that were lacking in Dr. Buscher's opinion.[91] The Commissioner

---

[88] A.R. 1237.

[89] *Ford v. Saul,* 950 F.3d 1141, 1155 (9th Cir. 2020) (internal citation omitted).

[90] A.R. 1237.

[91] Docket 10 at 16.

Case No. 5:23-cv-00002-SLG, *Joanne C. v. O'Malley*
Decision and Order
Page 16 of 30

disputes this and asserts that, although Dr. Buscher described Plaintiff's allergy test results and lead/mercury levels, he "did not identify any objective medical evidence that would support the specific limitations he identified."[92]

As noted by this Court in its previous decision, Ninth Circuit district courts have observed that "[t]he diagnosis of a multiple chemical sensitivity is a tricky one, because it is, by its very nature, idiosyncratic and difficult to assess objectively."[93] Dr. Buscher stated that his office visits included "allergy testing, laboratory testing and starting various treatments" and Plaintiff's test results indicated allergies to mold, dust, and chemicals as well as elevated lead and mercury in laboratory findings.[94] He also stated that there is "[n]o test of physiological function [that] can explain" the symptoms caused by multiple chemical sensitivity and "[a]lthough there may be clinical abnormalities, such as bronchospasm or neuropsychological dysfunction, these are insufficient to explain the illness pattern."[95] Dr. Hu, an examining physician, also explained that multiple chemical sensitivity syndrome "is not accompanied by consistent physical or laboratory findings."[96]

However, Dr. Buscher did not explain how Plaintiff's allergy testing, laboratory findings, and various treatments supported his 2014 opinion that Plaintiff was

---

[92] Docket 12 at 3.

[93] A.R. 1331. *See also Foreman v. Comm'r of Soc. Sec. Admin.,* No. CV-22-08116-PCT-SPL, 2023 WL 3247008, at *2 (D. Ariz. May 4, 2023) (citing *Teitelbaum v. Astrue,* No. CV 10-07167 RZ, 2011 WL 5293278, at *1 (C.D. Cal. Nov. 3, 2011)).

[94] A.R. 767.

[95] A.R. 1107.

[96] A.R. 742.

unemployable due to her chemical sensitivities or the exertional limitations set forth in his 2016 opinion.[97]

In the context of the record as a whole and the ALJ's other stated reasons, discounting Dr. Busher's medical opinions based on Dr. Buscher's failure to document abnormalities or observations of signs and symptoms in line with the reported allegations is a specific and legitimate reason, supported by substantial evidence.

b. *Stable to Improved Symptoms*

Plaintiff alleges that the ALJ failed to show that Plaintiff's chronic but stable symptoms were inconsistent with Dr. Buscher's limitations and inability to tolerate even low-level exposure to chemicals. She also alleges that the ALJ mischaracterized temporary references to mild improvement as inconsistent with Dr. Buscher's opinions.[98]

"[E]vidence of medical treatment successfully relieving symptoms can undermine a claim of disability."[99] But symptom improvement must be evaluated in the context of the "overall diagnostic picture[.]"[100] And, "there can be a great distance between a patient who responds to treatment and one who is able to enter the workforce[.]"[101]

In this case, the ALJ discounted Dr. Buscher's opinions because his treatment records showed that Plaintiff was "generally stable to improved from an objective and

---

[97] A.R. 456–58, 647.

[98] Docket 10 at 17–18.

[99] *Wellington v. Berryhill,* 878 F.3d 867, 876 (9th Cir. 2017).

[100] *Holohan,* 246 F.3d at 1205.

[101] *Garrison,* 759 F.3d at 1017 n.23 (internal quotations and citation omitted).

clinical standpoint . . . despite significant chemical exposures in her home environment, travel by airplane, and trips to town through the date last insured."[102]  The Court's review of the record also shows that within the relevant disability period, Dr. Buscher frequently indicated that Plaintiff's ongoing exposures to chemicals was the primary barrier to more significant progress, but when she was able to avoid exposures, she felt better.  The Court's review also shows that Dr. Buscher's treatment notes documented some improvement with treatment, even with travel and recurring chemical exposures in her home.[103]

In sum, evidence of stable to improved symptoms is a specific and legitimate reason, supported by substantial evidence, for discounting Dr. Buscher's opinions during the disability period.

c.    *Inconsistent with Treatment Notes*

---

[102] A.R. 1237.

[103] *E.g.* A.R. 637 (her home is generally fairly toxic), 638 (as long as she avoids exposures to chemicals she feels fairly decent), 640 (working on getting her small environmentally safe home constructed before winter), 642 (plans to go back to a home that is probably not chemically safe for her so she will be living in her tent for the next two weeks), 643 (pretty much is still chemically sensitive, but recovers quicker than she used to, she has learned to do a better job of avoidance, which is restrictive), 646 (feeling better gradually ever since she has been getting treatment and has a plan for building her environmentally safe home), 647 (does not feel well; main problem is exposures to chemicals; feels somewhat better when she spends time away from home for a week or more), 649 (reactions in her home and still planning on eventually moving), 651 (has good days when she is not being exposed to various chemical irritants), 652 (minimal progress, most likely because of ongoing frequent exposures to chemical irritants), 653 (doing somewhat better overall, but still quite chemically sensitive), 654 (struggling with chemical exposures which she can't seem to get away from for very long), 655 (did fairly well initially after treatment, but unable to avoid chemical exposures as much as she would like and condition has worsened since returning home).

Case No. 5:23-cv-00002-SLG, *Joanne C. v. O'Malley*
Decision and Order
Page 19 of 30

The consistency of a medical opinion with the provider's treatment notes is a relevant factor in the ALJ's evaluation of that opinion.[104] At the same time, an ALJ may not "cherry pick" evidence to discount a medical opinion.[105] Here, the ALJ found that Dr. Buscher's opinions were inconsistent with his own treatment notes, "which were focused on multiple chemical sensitivity."[106]

Plaintiff asserts that the ALJ "failed to point to any contrary evidence."[107] However, the ALJ provided examples from the record demonstrating that Dr. Buscher's treatment notes failed to explain that Plaintiff would be unable to tolerate nearly all workplaces and would have excessive work absences.[108] These examples included normal physical examinations, improvement when avoiding triggers, and recovering more quickly after treatment.[109]

In this case, the inconsistency between Dr. Buscher's opinions and his treatment notes is a specific and legitimate reason supported by substantial evidence for the ALJ's discounting of Dr. Buscher's opinion that Plaintiff would not be able to tolerate nearly all workplaces and would be excessively absent due to her symptoms.

   d.    *Normal Physical Examinations and Providers' Observations of No Apparent Distress*

---

[104] *See Ghanim v. Colvin,* 763 F.3d 1154, 1161 (9th Cir. 2014); *Orn v. Astrue,* 495 F.3d 625, 634 (9th Cir. 2007).

[105] *Ghanim,* 763 F.3d at 1164.

[106] A.R. 1237.

[107] Docket 10 at 17.

[108] A.R. 1237.

[109] *See e.g.,* A.R. 473–77, 484, 504–08, 637–40, 642–43, 788, 791.

Plaintiff asserts that the ALJ failed to explain why Dr. Buscher's opinions of physical arthralgias, headaches, numbness, and difficulty breathing are inconsistent with objective findings of "no acute distress" as well as normal respiratory, abdomen, musculoskeletal, extremity, neurological, lymphatic, and skin findings.[110]

While an ALJ may consider a lack of acute distress when assessing a claimant's symptom allegations, the ALJ must also consider the record as a whole and may not cherry-pick evidence to show a claimant is not disabled.[111] Here, in addition to notations of "no acute distress," the wider medical record shows normal physical examinations.[112] Taken together, Plaintiff's normal physical examinations and her providers' observations of minimal to no symptoms do not support her alleged physical arthralgias, headaches, mid abdominal pain, muscle aches, numbness around the mouth and face, sore throat, and difficulty breathing.[113] And, as noted by the ALJ, Dr. Hu "recommended continuing with strategies that limited exposures that triggered her symptoms, but specifically clarified that he did not feel that this meant she needed to live in a 'bubble' as there was no evidence that occasional symptom triggering led to worsening of the underlying

---

[110] Docket 10 at 19.

[111] *Holohan v. Massanari,* 246 F.3d 1195, 1207 (9th Cir. 2001).

[112] *See e.g.,* A.R. 473–77 (normal women's health exam; she got "plenty of activity walking"; lost weight since last year), 485 (no apparent distress, lungs clear and good air movement, normal objective exam; nutritionist consult due to patient eliminating too many nutrient rich foods), 504–08 (normal women's health exam, reported normal lab results), 728–29 (Dr. Makin's normal physical examination), 741 (normal cardiovascular, abdominal, neurological, mini-mental exams).

[113] A.R. 1237.

Case No. 5:23-cv-00002-SLG, *Joanne C. v. O'Malley*
Decision and Order
Page 21 of 30

condition or some other disease."[114]   This inconsistency is a specific and legitimate reason to discount Dr. Buscher's opinions.

     *e.*     *Progression of Symptoms After the Date Last Insured*

Plaintiff alleges that the ALJ failed to explain why the subsequent worsening of Plaintiff's symptoms after the date last insured undermined Dr. Buscher's opinions.[115] The Commissioner does not appear to address this argument.[116]  In the decision, the ALJ determined that "the evidence after the date last insured has shown that the claimant's condition was actually less limiting as of the date last insured given evidence of a later onset progression of symptoms actually occurring post-date last insured."[117]   The ALJ cited Dr. Buscher's 2019 opinion indicating that Plaintiff's "condition has gradually worsened over the years because of repetitive exposures to chemical irritants that are unavoidable living in our world today."[118]   The ALJ also cited Plaintiff's testimony in February 2023 that her health has gotten worse over the years, but that she had developed better ways to avoid triggers and would start feeling better after returning to a "clean area."[119]

---

[114] A.R. 1237.

[115] Docket 10 at 20.

[116] Docket 12 at 2–6.

[117] A.R. 1237.

[118] A.R. 1237.  *See* A.R. 1107.

[119] A.R. 1237.  *See* A.R. 1267.

An ALJ is required to provide detailed, reasoned, and legitimate reasons for rejecting a physician's findings; conclusory reasons are not sufficient.[120]  Here, the ALJ did not explain his conclusion that because Plaintiff's condition had worsened after the date last insured, her condition before the date last insured was not disabling.  Therefore, this is not a legitimate reason to reject Dr. Buscher's opinions.

In sum, the ALJ provided several reasons for rejecting Dr. Buscher's medical opinions.  One of the ALJ's reasons is not a specific and legitimate reason.  However, the error is inconsequential to the ultimate determination and the ALJ's path can be reasonably discerned despite the error.[121]  The remainder of the ALJ's reasons for discounting Dr. Buscher's medical opinion are specific, legitimate, and supported by substantial evidence.  Consequently, the ALJ's reasons for rejecting Dr. Buscher's medical opinions during the relevant disability period are valid.

*3.*     *Medical Opinion of Howard Hu, M.D.*

Plaintiff asserts that the ALJ failed to provide legally sufficient reasons for discounting Dr. Hu's medical opinion.  Specifically, she asserts that the ALJ ignored the abnormal clinical and laboratory findings and "failed to explain why Plaintiff's response to chemical exposures [was] inconsistent with the opinion that Plaintiff must avoid those exposures in order to avoid exacerbations of symptoms."[122]

---

[120] *Trevizo,* 871 F.3d at 675 (internal quotations and citations omitted).

[121] *See Treichler v. Comm'r of Soc. Sec. Admin.,* 775 F.3d 1090, 1099 (9th Cir. 2014).

[122] Docket 10 at 22.

On November 16, 2017, Howard Hu, M.D., rendered a medical opinion based on a physical examination, a personal history report, and a review of Plaintiff's records. He opined that Plaintiff was "significantly disabled" by her environmental sensitivities/multiple chemical sensitivities disorder (EC/MCS). He specified that he believed that she could not work in a "normal" or typical workplace "because of the disabling symptoms you experience when exposed to relatively low levels of fragrance products, cleaning products, motor vehicle exhaust, pain and sealing products, etc." Dr. Hu recommended that Plaintiff continue to limit exposures to substances that triggered her symptoms, but also specified, "I don't think you need to do more than that—such as living in a 'bubble'—as there is no evidence that occasional symptom triggering leads to worsening of the underlying condition (or some other disease)."[123]

The ALJ gave Dr. Hu's opinion some weight to the extent it suggested that Plaintiff did not need to live in a "bubble."[124] However, the ALJ discounted the remainder of Dr. Hu's opinion. The ALJ provided the following reasons: (a) the evaluation was performed almost a year after the date last insured and Dr. Hu saw Plaintiff only one time; (b) Dr. Hu's opinions that Plaintiff was significantly disabled, couldn't work in a typical workplace, and needed accommodations due to difficulty with even low-level exposures, were "not well explained in light of his acknowledgement that there was no evidence that occasional

---

[123] A.R. 743.

[124] A.R. 1238.

Case No. 5:23-cv-00002-SLG, *Joanne C. v. O'Malley*
Decision and Order
Page 24 of 30

symptom triggering would lead to worsening of the underlying condition or some other disease"; and (c) the longitudinal record did not support these opinions.[125]

      *a.     Evaluation after the Date Last Insured; One Examination*

Previously, this Court noted that the record did not show that Plaintiff's condition had "improved or changed" between the date last insured and Dr. Hu's examination. Consequently, the case was remanded to evaluate Dr. Hu's medical opinion.[126]  Again, because Plaintiff's condition did not significantly change in the year after her date last insured, discounting Dr. Hu's opinion on this basis alone is not sufficient.

The ALJ also discounted Dr. Hu's opinion because Dr. Hu saw Plaintiff for only one evaluation "despite acknowledging a preference for at least two separate evaluation visits for this condition."[127]  In his November 2017 report, Dr. Hu stated:

> Although I typically withhold a firm diagnosis of EC/MCS until at least 2 separate patient evaluation visits are conducted (to assess the consistency of the symptoms, new laboratory testing, etc.), given the circumstances of your residence in Alaska and difficulties of travel, I am willing to furnish this opinion based on this one single, fairly comprehensive evaluation, and under the assumption that the history and facts of your situation, as summarized in this report, are accurate.[128]

Given Dr. Hu's preference for two evaluation visits, the ALJ's discounting of Dr. Hu's opinions on this basis is a specific and legitimate reason.

      *b.     Internally Inconsistent Opinion; Not Supported by the Longitudinal Record*

---

[125] A.R. 1238–39.

[126] A.R. 1334.

[127] A.R. 1238.

[128] A.R. 741–42.

The ALJ rejected Dr. Hu's opinions that Plaintiff was significantly disabled, couldn't work in a typical workplace, and needed accommodations due to difficulty with even low level exposures. He concluded that these opinions conflicted with Dr. Hu's opinion that occasional symptom triggering did not worsen her condition or some other disease and were not supported by the longitudinal record.[129]

As explained above, Plaintiff's normal physical examinations, improvement when avoiding triggers, recovery more quickly after treatment, and Dr. Hu's own opinion that occasional symptom triggering did not worsen Plaintiff's condition, do not support Dr. Hu's opinions that Plaintiff was significantly disabled, couldn't work in a typical workplace, and needed accommodations due to difficulty with even low level exposures. This is a specific and legitimate reason for discounting Dr. Hu's opinions.

Because there are specific and legitimate reasons for discounting Dr. Hu's opinions, the ALJ's discounting of Dr. Hu's opinion because it was rendered after the date last insured is harmless error and the ALJ's reasons for rejecting Dr. Hu's medical opinions during the relevant disability period are valid.

B.    Plaintiff's Symptom Testimony and Reports

In February 2020 and February 2023, Plaintiff testified that she was unable to work due to fatigue, respiratory problems, body aches, and sometimes confusion due to sensitivities to exhaust, fumes, air fresheners, perfume, laundry soap, and other irritants. She testified that she tried to minimize her trips to town because going to places like the grocery store, post office, laundromat, and bank made her sick. Plaintiff also testified that

---

[129] A.R. 1238.

Case No. 5:23-cv-00002-SLG, *Joanne C. v. O'Malley*
Decision and Order
Page 26 of 30

Case 5:23-cv-00002-SLG    Document 15    Filed 07/11/24    Page 26 of 30

she slept in a tent or in a converted chicken coop during the summer months because she woke up feeling better. She indicated that she had been building an environmentally safe cabin for approximately eight years, but her home exacerbated her symptoms due to its proximity to a sawmill and smoke from her wood stove. She testified that she traveled by plane annually to the East Coast during the relevant disability period to visit her mother in assisted living care. She also traveled for her father's funeral and her son's graduation. She would stop in Seattle on her return from these visits for one or two weeks to receive treatment from Dr. Buscher. She indicated that Dr. Buscher's treatments helped, but that it still took her two to three weeks of rest to recover from travel. She stated that her condition had worsened over time, but that she also had developed better ways of avoiding triggers.[130]

### 1. Legal Standards

An ALJ's assessment of a claimant's symptoms has two steps.[131] First, the ALJ determines whether the claimant has presented "objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."[132] In the first step, the claimant need not "show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom. Nor

---

[130] A.R. 41–51, 1259–80.

[131] *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017).

[132] *Id.* (quoting *Garrison,* 759 F.3d at 1014–15).

must a claimant produce objective medical evidence of the pain or fatigue itself, or the severity thereof."[133]

Second, if the claimant has satisfied step one and the ALJ has determined that the claimant is not malingering, the ALJ must provide "specific, clear and convincing reasons" for rejecting the claimant's testimony regarding the severity of the claimant's symptoms. This standard is "the most demanding required in Social Security cases."[134] Yet, this does not mean an ALJ is required to "simply accept a claimant's subjective symptom testimony notwithstanding inconsistencies between that testimony and the other objective medical evidence in the record, allowing a claimant's subjective evidence to effectively trump all other evidence in a case."[135]

In this case, the ALJ determined Plaintiff's impairments could reasonably be expected to cause some of the alleged symptoms that Plaintiff described. The ALJ then found that from July 15, 2012, through the date last insured of December 31, 2016, Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record.[136]

Because the ALJ found Plaintiff's underlying impairments severe and cited no evidence of malingering, the ALJ was required to provide specific, clear, and convincing

---

[133] *Garrison,* 759 F.3d at 1014 (internal citations and quotations omitted).

[134] *Trevizo,* 871 F.3d at 678.

[135] *Smartt v. Kijakazi,* 53 F. 4th 489, 499 (9th Cir. 2022).

[136] A.R. 1231.

Case No. 5:23-cv-00002-SLG, *Joanne C. v. O'Malley*
Decision and Order
Page 28 of 30

reasons for rejecting Plaintiff's subjective symptom allegations. Here, the ALJ provided the following reasons for discounting Plaintiff's symptom testimony and reports: (a) Plaintiff's symptoms were stable to improved despite significant exposures to irritants in her home, while traveling, and on trips to town; (b) treatments were beneficial; (c) it was recommended that Plaintiff need not "live in a bubble"; and (d) her worsening symptoms after the date last insured showed that Plaintiff's condition was less limiting before the date last insured.[137]

"When objective medical evidence in the record is *inconsistent* with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony."[138] However, the ALJ may not reject subjective testimony solely because it was not fully corroborated by objective medical evidence.[139] Here, based on the evidence discussed above, Plaintiff's physical examinations and providers' observations of minimal to no symptoms are inconsistent with Plaintiff's testimony that she was unable to work between July 15, 2012 and December 31, 2016 due to fatigue, respiratory problems, body aches, and sometimes confusion. The evidence of record shows Plaintiff's symptoms were stable to improved during that time despite significant exposures in her home, while traveling, and on trips to town. Moreover, her subjective testimony is inconsistent with Dr. Hu's recommendation that Plaintiff need not "live in a bubble," as an aggravation in Plaintiff's symptoms did not lead to a worsening of her condition. Therefore,

---

[137] A.R. 1234–35.

[138] *Smartt,* 53 F.4th at 498 (collecting cases) (emphasis in original).

[139] *Robbins v. Soc. Sec. Admin.,* 466 F.3d 880, 883 (9th Cir. 2006).

Case No. 5:23-cv-00002-SLG, *Joanne C. v. O'Malley*
Decision and Order
Page 29 of 30

inconsistency with the objective evidence, improvement with treatment, and inconsistency with her examining physician's recommendation, are sufficiently clear and convincing reasons for the ALJ to discount Plaintiff's testimony.

The ALJ's final reason, that Plaintiff's worsening condition after the date last insured demonstrated that Plaintiff was not disabled before the date last insured, is not sufficiently clear or convincing for the reasons discussed above. However, the ALJ's decision relating to a claimant's symptom testimony may be upheld even if not all of the ALJ's reasons for discounting the testimony are upheld.[140]

For the reasons set forth herein, the Court concludes that the ALJ did not err by discounting Plaintiff's symptom testimony.

## V.  ORDER

The Court, having carefully reviewed the administrative record, finds that the ALJ's determinations are free from legal error and are supported by substantial evidence. Accordingly, IT IS ORDERED that Plaintiff's request for relief at Docket 10 is DENIED. The Commissioner's final decision is AFFIRMED. The Court directs the Clerk of Court to enter judgment in favor of Defendant and close this case accordingly.

DATED this 11th day of July 2024, at Anchorage, Alaska.

*/s/  Sharon L. Gleason*
UNITED STATES DISTRICT JUDGE

---

[140] *Batson v. Comm'r of Soc. Sec. Admin.,* 359 F.3d 1190, 1197 (9th Cir. 2004).